Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

In Re:                              )
                                    ) Bankruptcy Case No.
 Kirk and Tammy Freeland,           )
                                    ) 19-32309-pcm7
                                    )
                                    ) OPINION
                    Debtors.        )

Debtors Kirk and Tammy Freeland (referred to individually as "Kirk" or "Tammy" and collectively as "the Freelands") filed a Motion for Order of Contempt ("the Motion") for violation of the automatic stay imposed under 11 U.S.C. § 362(a)[1] against Verizon Wireless Services ("Verizon"). Doc. 18. For the reasons that follow, I find that Verizon violated the automatic stay and is liable for damages under § 362(k) in the total amount of $24,931.95.

**Background and Facts**

The Freelands filed their chapter 7 bankruptcy petition on June 21,

---
[1] Unless otherwise indicated, all references to chapters and sections are to the Bankruptcy Code, 11 U.S.C. § 101, et seq.

Page | 1 OPINION

2019. They listed Verizon on their bankruptcy schedules as a joint liability. Doc. 1, Schedule E/F, G. Verizon also appears on the Freelands' creditor matrix. Exhibit A.

The Freelands received telephone calls at home from Verizon after they filed their bankruptcy petition. In each instance, Tammy testified that the callers identified themselves as representatives of Verizon and Tammy identified herself.[2] In the initial calls, Tammy told Verizon that she had filed bankruptcy and provided the caller with contact information for her attorney. She also told Verizon it should not be calling because of the bankruptcy filing. Tammy testified that Verizon called approximately nine times after she filed her bankruptcy petition, beginning in September of 2019 and stopping in early October of the same year. Tammy testified that the last few times Verizon called, the caller hung up immediately after the parties identified themselves. As a result, Tammy testified that she believes Verizon was simply trying to bully her.

In early October of 2019, the Freelands received a bill from Verizon at their home addressed to Kirk ("the September Bill"). Exhibit B. The September Bill covered the period of September 11 through October 10, 2019. It shows no current charges, but, on page one, a past due balance of $201.54, with a note right below the balance, in red print, stating: "201.54 due immediately." Id. The next page of the September Bill shows the same amount due in large print with a notation

---

[2] Kirk testified that he was a truck driver during the relevant period and away from home most of the time.

Page | 2 OPINION

that states: "please pay immediately." Id.

In addition to the September Bill, the Freelands received, at their home address, a collection letter dated September 26, 2019, from CBE Group, Inc., (the Collection Letter), which states that "[y]our Verizon account has been referred to CBE Group for collection. Please take this opportunity to pay your account balance in full." Exhibit C. The Collection Letter is addressed to Kafree Trucking. Kirk owns and operates Kafree Trucking. The Freelands were not sure they had seen previous bills from Verizon made out to Kafree Trucking and could only speculate that the charges might be for a jet pack Kirk used in his truck to obtain internet service. The date of the Collection Letter overlaps with that covered by the September Bill, but shows a higher balance due of $576.00. Tammy testified that they had multiple lines, but only one Verizon account. Ultimately, neither Kirk nor Tammy was able to explain the nature of this bill and why it showed a different balance and account number than the September Bill.

Tammy testified that when she received the communications from Verizon, she was panicked. She testified that she questioned whether her counsel had properly prepared and filed her bankruptcy. She also testified that she realized at that point that Verizon was not going to stop trying to collect the debt if left to its own devices.

Verizon did not respond to the Motion. The Certificate of Service filed by the Freeland's counsel reflects that Verizon was served with the Motion at the following addresses:

```
     Verizon Wireless
     Bankruptcy Administration -Notices
     500 Technology Drive, #550
     Weldon Springs, MO 63304- 2225

     Verizon Wireless
     c/o CT Corporation System
     780 Commercial St., Ste. 100
     Salem, OR 97301

     Verizon Wireless Services, LLC
     c/o Ronan Dunne, CEO
     One Verizon Way
     Basking Ridge, NJ 07920
```

Doc. 21.

Under Local Bankruptcy Rule 7007-1(b)(3), Verizon had 14 days to respond to the Motion. No response was filed.

The Court set a preliminary hearing on the Motion for December 31, 2019. Doc. 20. Verizon received service of the motion and notice of hearing on November 14, 2019. Doc. 23.

On December 31, 2019, the Court conducted the preliminary hearing by telephone as scheduled. Verizon did not appear at the hearing. By notice dated January 31, 2020, the Court scheduled a hearing for March 24, 2020, to allow the Freelands to make a prima facia showing and prove damages. The hearing was held as scheduled on March 24, but by telephone due to COVID-19 restrictions. Again, Verizon did not appear. At the March 24 hearing, the Court considered the testimony of the Freelands, Exhibits A through D, all of which were admitted, and the arguments of counsel.

The Court scheduled a hearing for April 30, 2020, to announce its

Page | 4 OPINION

ruling. Doc. 33. However, after further consideration, the Court has concluded that issuance of a written opinion is necessary to effectively address Verizon's repeated violations of the automatic stay.

**Legal Analysis**

Section 362(a)(6) provides, with certain exceptions not applicable here, that the filing of a bankruptcy petition stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." The automatic stay plays a vital role in, and is central to the functioning of, the bankruptcy system. Far Out Prods. v. Oskar, 247 F.3d 986, 995 (9th Cir. 2001). The stay is imposed as a matter of law immediately upon commencement of a bankruptcy case and

> is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate. The automatic stay plays a vital and fundamental role in bankruptcy. The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.

In re Ramirez, 183 B.R. 583, 587 (9th Cir. BAP 1995)(quoting Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n, 997 F.2d 581, 585 (9th Cir. 1993)).

With a certain exception not implicated here, § 362(k)(1) mandates that an individual injured by a willful violation of the automatic stay be awarded damages. "A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for

damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." In re Pace, 67 F.3d 187, 191 (9th Cir. 1995). Knowledge of the bankruptcy "is the legal equivalent of knowing of the stay[.]" In re Zartun, 30 B.R. 543, 546 (9th Cir. BAP 1983). Notice of the bankruptcy may be given "by any means and in any manner[,]" including orally. In re Stucka, 77 B.R. 777, 781 (Bankr. C.D. Cal. 1987). Formal notice from the bankruptcy court is not required. In re Ozenne, 337 B.R. 214, 220 (9th Cir. BAP 2006)(citation omitted). "[A] good faith belief that the stay is not being violated 'is not relevant to whether the act was 'willful' or whether compensation must be awarded.'"[3] Morris v. Peralta, 317 B.R. 381, 389 (9th Cir. BAP 2004)(citation omitted).

Verizon violated § 362(a)(6) in at least two ways. First, Verizon violated the stay by repeatedly calling the Freelands after they filed their bankruptcy petition. Tammy testified that, despite being told of

---

[3] There is some question whether the traditional standard described above is still applicable after the United States Supreme Court's decision in Taggart v. Lorenzen, 139 S. Ct. 1795 (2019). In Taggart, the Supreme Court ruled that the proper standard for finding a violation of the discharge injunction is whether there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." Id. at 1801. The Supreme Court specifically left open the question of whether this same standard applies in actions for violations of the automatic stay. In the unpublished decision of Suh v. Anderson (In re Jeong), 2020 Bankr. LEXIS 714 (9th Cir. BAP 2020), the panel found that the new Taggart standard applies to violations of the stay when the aggrieved party is not an individual, and therefore not covered under § 362(k). Suh is distinguishable because the Freelands are individuals within the meaning of § 362(k). In addition, even if the Taggart standard applied, Verizon would be liable for damages because there was no objectively reasonable basis for Verizon to conclude that its actions were lawful under § 362.

Page | 6 OPINION

the bankruptcy and to contact her counsel, Verizon continued to call her. Second, Verizon violated the automatic stay when, approximately three months after the petition date, it sent the Freelands the September Bill asking for "immediate payment."[4]

The phone calls and delivery of the September Bill clearly were intentional acts on Verizon's part. Verizon is a sophisticated, commercial creditor that deals with bankruptcy cases as part of its daily business activities. Verizon knew of the bankruptcy and intended the acts that violated the stay. Furthermore, Verizon could have no reasonable basis to believe its conduct did not violate the stay. Verizon's collection attempts are the classic types of conduct that the stay was intended to stop.

I therefore find that Verizon willfully violated the stay ten times, nine times by telephone and once by sending the September Bill.

**Damages**

Section 362(k)(1) provides that an individual injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees[.]" § 362(k)(1). In "appropriate circumstances," punitive damages are also recoverable. Id.

---

[4] I conclude that the Freelands failed to meet their burden of proving that CBE Group's sending of the Collection Letter constitutes a willful violation of the stay by Verizon. The Collection Letter was addressed only to Kafree Trucking and the record does not support a finding that Verizon was aware that Kirk was doing business as Kafree Trucking.

Page | 7 OPINION

I.  Actual Damages

   A.  Economic Damages

Tammy testified that she suffers from generalized anxiety and other mental health issues for which she is actively being treated.  In September of 2019, she went to her primary care physician because of an increase in her anxiety caused by Verizon's collection activity. Her primary care physician prescribed her additional medications, which initially did not help. Tammy had approximately four appointments with her doctor because of increased anxiety and ongoing symptoms of post-traumatic stress disorder.  Tammy testified that her medical insurance fully covered the cost of the doctor appointments and the medication. However, in addition to seeking medical treatment, Tammy testified that she had to take her custodial grandchild to daycare because of her inability to function and her need to attend medical appointments.  She testified the daycare cost $450.00 per month and her grandchild was in daycare for two months.  Tammy testified that the amounts shown on Exhibit D, which include the childcare costs and travel expenses of $296.95 for Tammy's medical and attorney appointments, are an accurate estimate of the economic damages she suffered as a result of Verizon's conduct.  The Court will award economic damages of $1,196.95.

   B.  Emotional Distress Damages

Actual damages include damages for emotional distress. In re Dawson, 390 F.3d 1139, 1148 (9th Cir. 2004).  To be entitled to emotional distress damages under § 362(k), "an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and

Page | 8 OPINION

(3) demonstrate a causal connection between the significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." Id. Emotional distress damages may be established in several ways: corroborating medical evidence; non-expert testimony about manifestations of mental anguish; or circumstances that make it obvious that a reasonable person would suffer significant emotional harm. Id. at 1149-50.

I find that Verizon's conduct in this case would cause a reasonable person significant harm and that the Freelands have clearly established such harm. This case can be distinguished from the potentially excusable conduct of a bill slipping through the cracks, or an errant telephone call from an unsuspecting employee whose system has not quite caught up with the notice of bankruptcy. Tammy testified that her faith in the bankruptcy process and her counsel were shaken. She testified, credibly, about the telephone calls being triggers for her anxiety. She repeatedly sought medical attention and put her grandchild in daycare because of her increased anxiety. The Freelands were entitled to the protection afforded by the automatic stay without harassment from Verizon. I will award $8,000.00 in emotional distress damages ($750.00 per telephone call and $1,250.00 for the September Bill).

C. Attorney Fees

The Freelands are also entitled to reasonable attorney fees incurred in connection with the Motion. Counsel for the Freelands filed a request for attorney fees in the amount of $12,385.00 on May 13, 2020.

Page | 9 OPINION

Doc. 37. The Freelands are not seeking the reimbursement of any costs. I will allow the fees as requested, other than the sum of $1,650.00. Counsel billed for preparing discovery requests before he knew whether the case would be contested. Doc. 37, Exhibit A (time entries dated 12/9/2019 and 12/26/2019). I find those services were not appropriate or necessary. I find the balance of the fees to be reasonable. I will therefore allow total fees of $10,735.00.

II. Punitive Damages

Punitive damages may be awarded if a defendant's conduct was malicious, wanton or oppressive, or if the violator engaged in "egregious, intentional misconduct." In re Stinson, 295 B.R. 109, 122 (9th Cir. BAP 2003)(citation omitted), aff'd in part, rev'd in part on other grounds, 128 Fed. Appx. 30 (9th Cir. 2005)(unpublished).

In the Motion, the Freelands asked for "mild deterrent sanctions" not to exceed $5,000.00.[5] As requested, I will award the sum of $5,000.00 in punitive damages.

I find Verizon's conduct malicious, wanton and oppressive, and that it engaged in egregious, intentional misconduct. Verizon deals with bankruptcy filings as part of its normal course of business. Tammy testified, credibly, that she told Verizon she had filed bankruptcy and

---

[5] A request for deterrent or coercive sanctions is more appropriate for a contempt motion relating to a violation of the discharge injunction rather than the automatic stay. See In re Vargas, 2012 Bankr. LEXIS 856 (Bankr. E.D. Wash. 2012); In re Hawley, 2003 Bankr. LEXIS 448 (Bankr. D. Idaho 2003). The Motion provided Verizon with notice that the Freelands were seeking damages in excess of their actual damages, so I find it of no consequence that the request was labeled as one for mild coercive sanctions rather than punitive damages.

Page | 10 OPINION

to contact her lawyer. Verizon's continued collection efforts demonstrate egregious, intentional misconduct. In addition, Verizon should have appropriate systems in place to avoid post-petition telephone calls and collection bills when a customer is in a bankruptcy proceeding or has received a discharge. As I will discuss next, whatever system Verizon has in place clearly is woefully inadequate.

III. <u>Verizon's Repeated Failure to Abide by the Automatic Stay and Discharge Injunction.</u>

Contempt actions against Verizon are not new to this Court. In researching cases on violations of the automatic stay, the Court came across the relatively recent case of <u>In re St. Clair</u>, 2018 WL 3629894 (Bankr. D. Mont. 2018). In <u>St. Clair</u>, the debtors filed a contempt action against Verizon for repeated violations of the automatic stay and discharge injunction. The court in <u>St. Clair</u> stated:

> Verizon has demonstrated a cavalier approach in this case to the automatic stay, the Discharge Order, and most recently, the Show Cause Order. Indeed, it appears that Verizon's contempt is ongoing, given the most recent violation of the Discharge Order occurred after the hearing.

<u>Id</u>. at *7. The court in <u>St. Clair</u> addressed an earlier case it had decided involving Verizon, <u>In re Lewis</u>, 2017 WL 1233816 (Bankr. D. Mont. 2017), and discussed its research into additional cases involving claims against Verizon from other jurisdictions, stating:

> In <u>Lewis</u>, along with actual damages, this Court imposed a fine or penalty of $500 per violation on Verizon, and there were 10 violations. A court may take judicial notice of other court proceedings. Prior to doing so, this Court took considered [sic] 3 other cases in which Verizon had been held in contempt or otherwise sanctioned for automatic stay and

Page | 11 OPINION

> discharge violations. The similarities between those cases, this case and <u>Lewis</u> suggest to this Court that $500 per violation was simply insufficient for coercing Verizon to scrutinize its practices and implement appropriate measures that avoid violations of the automatic stay and discharge injunction. As a result, in this case the Court is going to impose a fine or penalty of $1,000 per violation for a total of $8,000. An additional penalty of $1,000 per violation will be imposed if Verizon continues to violate Debtors' discharge. Debtors are authorized to request additional fines and attorney's fees if Verizon continues its violations.

<u>St. Clair</u>, 2018 WL 3629894, at *7.

It is apparent from the two decisions from Judge Hursh and the other cases cited in his opinion that Verizon has a systemic problem. The next time Verizon appears before this Court because it violated the automatic stay or discharge injunction, the sanctions levied against it likely will be much more significant and include non-monetary obligations.

In summary, it appears that Verizon received correct and robust notice of the Freelands' bankruptcy and the Motion and therefore cannot blame its failure to timely stop collection efforts or to appear and address the Motion on defective notice or service.[6] The only conclusion this Court can reach is that Verizon does not have an adequate protocol in place to deal with bankruptcy cases or has made the business decision that it is cheaper to pay for its mistakes when caught than to abide by the law.

---

[6] The compliance report filed by Verizon in response to the court's decision in <u>St Clair</u> includes proper service addresses as suggested by Verizon's counsel. The addresses used by counsel for the Freelands in connection with the Motion appear to be consistent with those suggested by Verizon in the <u>St. Clair</u> case. <u>See</u> <u>In re St. Clair</u>, Case No. 17-60940-BPH (Bankr. D. Mont.), Doc. 48, Exhibit B.

Page | 12 OPINION

## Conclusion

Verizon willfully and repeatedly violated the automatic stay imposed by § 362(a)(6).  The Freelands are entitled to damages totaling $24,931.95. Counsel for Debtors should submit an order consistent with this opinion.